IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TYRONE DALE, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. ELH-11-1552 |
| OFFICER BAKER, et al., | * | |
| Defendants. | * | |

******

**<u>MEMORANDUM</u>**

On June 6, 2011, self- represented plaintiff Tyrone Dale, an inmate currently incarcerated at the George W. Hill Correctional Facility in Thorton, Pennsylvania, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, seeking money damages and injunctive relief. Plaintiff alleges he was subjected to excessive force when he was arrested by defendants, members of the Salisbury Police Department. ECF No. 1. Pending before the court is defendants' "Motion To Dismiss Or, Alternatively, For Summary Judgment" ("Motion," ECF No. 10), which shall be treated as a motion for summary judgment.[1] Plaintiff has filed a response. ECF 12. Plaintiff has also filed a motion for appointment of counsel. ECF No. 14. Upon review of the submissions, the Court is satisfied that a hearing in this matter is unnecessary. *See* Local Rule 105.6. For the reasons that follow, ECF 10 SHALL BE GRANTED and ECF 14 SHALL BE DENIED.

---

[1] Plaintiff has responded to defendants' dispositive motion ( ECF No. 12) but has failed to provide any affidavit, even his own, to contradict defendants' version of events. Although a court may treat a verified complaint as an affidavit for purposes of summary judgment, plaintiff's complaint has not been verified. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Other documents may not be considered on a motion for summary judgment unless they are authenticated, either by an affidavit or deposition. *See Orsi v. Kirkwood*, 999 F. 2d 86, 92 (4th Cir. 1993). Plaintiff was given notice of his rights and responsibilities with regard to the motion for summary judgment filed against him in accordance with the requirements of *Roseboro v. Garrison*. *See* 528 F. 2d 309, 310 (4th Cir. 1975); *see* ECF No. 12.

**Background**

By way of an unverified complaint, plaintiff states that defendants "beat [him] within an inch of [his] life," used excessive force, and that a citizen assisted the officers in beating him. ECF No. 1.  He alleges that, as a result of the actions of defendants, he is now blind in his right eye.  Plaintiff asks that the officers be fired, the citizen arrested, and that he be awarded damages. *Id.* He also asks that they be charged criminally.

According to the verified record, at 10:20 p.m. on November 22, 2009, Officers Eric Baker and Justin Fontaine, defendants, responded to a call for an armed robbery in progress at the Food Lion Grocery Store located at 817 Snow Hill Road, Salisbury, Maryland. ECF No. 10, Exs. 1 & 2 (Affidavits of Baker and Fontaine, respectively).  In separate vehicles, Baker and Fontaine proceeded to the scene.  As they approached, they were advised by police communications that security personnel at the store had a live video feed of the robbery and the suspect was exiting the store.  Defendants were also informed that the suspect was wearing a black hooded sweatshirt, black pants, tan boots, and was carrying a shotgun. *Id.*

Upon arriving at the scene, Baker observed a black male bending over near a Christmas tree display at the south side exit door of the store.  The man, later identified as plaintiff, wore clothes matching the description of the suspect given by the dispatcher.  Baker stopped his police car approximately fifteen feet from plaintiff, exited the vehicle, and ordered plaintiff to "show [his] hands!"  Instead, plaintiff fled along the side of the building, towards Regency Drive. *Id.*

Baker and Fontaine chased the plaintiff. *Id.*  As plaintiff reached the tree line separating Food Lion from Regency Drive, Baker observed plaintiff drop the shotgun he had been holding and continue running. *Id.*, Ex. 1.  The shotgun, whose barrel had been sawed off, was later secured and identified. *Id.*

Baker and Fontaine continued their foot pursuit of plaintiff on Regency Drive.  Plaintiff turned into the backyard of 702 Regency Drive, stopped running, and turned to face the officers.

2

*Id.*, Ex. 1 & 2. Baker ordered plaintiff to "get down on the ground with your hands at your side!" *Id.*, Ex. 1. Rather than comply, plaintiff turned and ran toward the front of the residence. Baker and Fontaine overtook plaintiff and forcefully tackled him to the ground. *Id.*, Ex. 1 & 2. As Baker reached for his handcuffs, plaintiff vigorously tried to get Fontaine off of him and to conceal his hands under his upper body. In an effort to gain plaintiff's compliance in being handcuffed, Fontaine sprayed "OC spray" into plaintiff's face. Nevertheless, plaintiff "continued to resist fiercely" any efforts to subdue him. ECF 10, Exh. 1.

Although Baker had managed to handcuff plaintiff's right hand he had been unsuccessful in cuffing the left. Plaintiff refused all commands to stop resisting. Baker and Fontaine were unable to pull plaintiff's arms from underneath him. With his baton, Fontaine struck plaintiff numerous times on the back of his upper thighs. Baker and Fontaine were joined by an occupant of the residence and were then able to secure the handcuffs.[2] *Id.* Defendant Oliver arrived on the scene and secured the shotgun until Fontaine could retrieve it.

Plaintiff stated he needed medical attention; emergency medical personnel were called. Defendant Mosher stayed with plaintiff as he was treated by emergency medical personnel. ECF No. 10, Ex. 1 & 2.[3] Plaintiff was transported by ambulance to the Peninsula Regional Medical Center in Salisbury. *Id.*

### Appointment of Counsel

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686

---

[2] Plaintiff was arrested, advised of his *Miranda* rights, and ultimately convicted in this court of interference with commerce by robbery, being a felon in possession of a firearm, and possession of a firearm in furtherance of a crime of violence. *Id.*; *see also United States v. Dale*, Criminal No. RDB-10-144 (D. Md).

[3] Defendants Oliver and Mosher were not involved in the conduct that is the subject of the complaint. Therefore, plaintiff's complaint against them is subject to dismissal.

F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*.

Upon careful consideration of the filings submitted by plaintiff, the Court finds that he has demonstrated the wherewithal either to articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the Court are not unduly complicated. Therefore, there are no exceptional circumstances that warrant the appointment of an attorney to represent plaintiff under §1915(e)(1).

## Motion for Summary Judgment

### 1. Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a). It provides, in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. In *Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986), the Court said:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. (Emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the court must "view the evidence in the light most favorable to....the nonmovant, and

draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## 2. Analysis

A.  Excessive Force

To the extent plaintiff claims that his arrest could have been effected with lesser force, his claim fails. Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989); *Orem v. Rephann*, 523 F.3d 442, 445-6 (4th Cir. 2008). This requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted). Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396.

Notably, the determination is to be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id; see also Abney v. Coe*, 493 F.3d 412, 416 (4th Cir. 2007) (holding "[Fourth Amendment] reasonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight.") Further, "[t]he right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." *See Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). "The Constitution simply does not require

police to gamble with their lives in the face of a serious threat of harm." *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996). Moreover, the use of force in preventing the escape of a dangerous suspect is constitutional. *Garner*, 471 U.S. at 11.

The declarations supplied by defendants and supported by the physical evidence recovered during the investigation of the crime demonstrate that Baker and Fontaine were responding to a call regarding an armed robbery in progress. Baker and Fontaine responded to the area and saw plaintiff, who fit the description of the robber and who fled from them when commanded to stop. Plaintiff led Baker and Fontaine on a foot chase, wherein they observed him drop a deadly weapon. He refused all verbal commands to stop and submit to their authority, fleeing onto private property, where he was tackled. Once tackled, plaintiff continued to violently resist his arrest, placing his arms under his body, and failing to comply even after the use of OC spray. Only then did Fontaine used his baton in an effort to handcuff plaintiff, who continued to violently resist defendants' efforts. A private citizen came to the aid of the officers, and plaintiff was finally handcuffed.

Considering the totality of the circumstances, the court cannot say that it was unreasonable for defendants, in the exigency of the situation, to restrain plaintiff forcibly and to employ immobilization spray and a baton in doing so. The force used by defendants was the amount necessary to restrain plaintiff, who was actively resisting his arrest and assaulting defendants. Defendants reasonably believed that plaintiff was the person who, while armed, had just robbed the Food Lion. *See Elliott v. Leavitt*, 99 F. 3d 640, 644 (4th Cir 1996) ("officers need not be absolutely sure....of the nature of the threat or the suspect's intent to cause them harm. The Constitution does not require that certitude precede the act of self-protection").

Plaintiff does not dispute that he fled from the officers or that he violently resisted their efforts to subdue him. The events surrounding plaintiff's arrest were undertaken both in self-defense and in protection of the public. Defendants acted reasonably in light of the information

available to them at the time. *See Graham*, 490 U.S. at 396.

B. Qualified Immunity

Defendants claim that, even if their actions were unconstitutional, they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied*, _____ U.S. _____, 132 S.Ct. 781 (2011). Qualified immunity insures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

The qualified immunity test originally set out in *Harlow* has been expressed in a variety of ways.  For example, the Court has inquired whether "[t]he contours of" a plaintiff's asserted right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right," *i.e.,* whether "in the light of pre-existing law the unlawfulness" of "an official action is ... apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The Court has also phrased "[t]he dispositive inquiry in determining whether a right is clearly established [as] whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier v. Katz,* 533 U.S. 194,  202 (2001), or "whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information [he] possessed." *Wilson v. Layne,* 526 U.S. 603, 615 (1999).

"In determining whether a government official is entitled to qualified immunity, '[courts] must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable offic[ial] would have understood that the conduct at issue violated the clearly established right.'" *Henderson v. Simms*, 223 F.3d 267, 271 (4th  Cir. 2000) (*quoting S. P. v. City of Tacoma Park*,

134 F.3d 260, 265 (4th Cir. 1998)); *see also Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998).

Plaintiff claims that his right to be free from excessive force was violated. In determining whether the right claimed to be violated is clearly established "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 641. "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). "If there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies." *Korb v. Lehman*, 919 F.2d 243, 247 (4th Cir. 1990).

"The 'meaning' of the Fourth Amendment, at least when stated in broad philosophical terms, is relatively clear. The precise action or combination of actions, however, which will infringe a particular suspect's Fourth Amendment rights is often difficult for even the constitutional scholar to discern because the legal doctrine has developed and continues to develop incrementally." *Tarantino v Baker*, 825 F.2d 772 (4th Cir. 1987) (holding even when court concludes that police officer violated constitutional right, officer remains shielded from civil liability unless right was clearly established.)

The third prong of the qualified immunity analysis, reasonableness, is analyzed on an objective standard. *See Anderson*, 483 U.S. at 638. The proper inquiry is whether a reasonable officer could have believed the application of force was lawful. *Id*. at 641. Under the facts of this case, the court finds that a reasonable officer could have believed that plaintiff was the perpetrator of an armed robbery and, as such, there was sufficient justification to stop and arrest plaintiff. All of the actions that followed involved defendants' efforts to subdue plaintiff and effectuate his arrest. Each of defendants' actions was reasonable under the circumstances.

Defendants' actions were within the range of reasonableness expected of a police officer and they are thus entitled to qualified immunity.

## Conclusion

For the reasons stated above, defendants' motion for summary judgment shall be granted. A separate order follows.


Dated:  March 13, 2012                              /s/_____
                                                    Ellen Lipton Hollander
                                                    United States District Judge